# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

LINDA BRAGG,                          )
                                      )
    Plaintiff/Appellee,       )    Davidson Law No. 92C-2533
                                      )
vs.                                   )
                                      )    Appeal No. 01A01-9703-CV-00111
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON                )
COUNTY,                               )
                                      )
    Defendant/Appellant.      )

**FILED**

**December 30, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

### APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### THE HONORABLE HAMILTON V. GAYDEN, JR., JUDGE

For the Defendant/Appellant:       For the Plaintiff/Appellee:

James L. Murphy, III                Nancy K. Corley
William Michael Safley             V. Michael Fox
Nashville, Tennessee              Kelley A. Sauls
                                 Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This is a slip and fall case under the Governmental Tort Liability Act. The heel of the plaintiff's shoe caught in a hole as she descended the stairs of a government building, resulting in injuries. The trial court found the defendant to be 100% negligent and awarded damages to the plaintiff. The defendant appeals, contending that the hole in the steps was not a dangerous and defective condition or, in the alternative, that it was open and obvious. We affirm.

In October 1991, Plaintiff/Appellee Linda Bragg ("Bragg") left her office building in downtown Nashville around two o'clock in the afternoon and drove to the Howard Office School Building, ("Howard building") to purchase car license tags. Bragg parked her car in the vicinity of the Howard building and walked up the front sidewalk to its main entrance. In front of the building are several steps leading up to three pairs of doors. At this time, there were only two handrails, located over forty feet apart, along the length of the stairs. Bragg walked up the stairs and entered the building. Once in the building, she found that she needed to return to her car in order to get more money for the license tags. Bragg walked down the stairs and returned to her car. She then re-entered the building by walking up the same stairs. After purchasing the license tags, Bragg exited the building and began to descend the stairs. Not including the top landing, six steps lead up to the building. As Bragg stepped off the first step, the heel of her shoe caught in a hole along the front edge of the first step. This caused her to fall forward. Bragg sustained a variety of injuries to her knee and back, with significant medical expenses and lost wages.

Bragg then filed this action in the Circuit Court of Davidson County against the Metropolitan Government of Nashville and Davidson County ("Metro"), pursuant to the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated §§ 29-20-204 and 205. She sought damages for her injuries, including medical expenses and lost wages.

At the bench trial, it was undisputed that the hole measured two inches by two and one-half inches (2" x 2.5") and was located in a seam where two large marble sections were joined together at the front of the step. The hole was directly in front of the middle set of doors. Sam McPherson, Metro's Director of General Services, testified at trial that this was a "high traffic area." McPherson stated that Metro's records indicated that they had never received any complaint concerning the hole, nor had they received any complaint about anyone falling on the steps as a result of a defect in the steps. McPherson also stated that a Metro employee, Charlie Rhodes, was an "on-site maintenance person" for the Howard building and had the authority to initiate repairs to the Howard

building.

At trial, Metro contended that Bragg was in a hurry and could have used the handrails on either side of the steps. Metro argued that the hole in the steps was not a "defective, unsafe, or dangerous condition," under Tennessee Code Annotated § 29-20-203, and would not give rise to a duty by Metro to repair it. Metro also argued that the hole was "open and obvious," and that Metro therefore had no duty to repair it or warn those entering or exiting the building.

After the trial, the trial court found the following:

1) Metro was 100% negligent and the affirmative defense of comparative negligence does not apply;
2) The steps to the Howard building were defective and dangerous and the dangers were not open and obvious to Bragg;
3) Bragg proved that Metro had constructive notice of the defective and dangerous condition of the steps: the crack between the two segments of the concrete steps was unfilled, and the concrete had obviously deteriorated and disappeared over a long period of time; therefore, Metro should have had notice of the hole;

The trial court entered an order of judgment for Bragg in the amount of $130,000. Metro now appeals this decision.

On appeal, Metro argues that the trial court erred in finding that the hole in the steps which caught Bragg's heel constituted a dangerous and defective condition thereby imposing upon Metro a duty to warn or repair. Metro also contends that the hole constituted an "open and obvious condition," which relieved Metro of the duty to repair or warn those entering or exiting the building.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

In Tennessee, a municipality is liable for foreseeable injuries resulting from defects and obstructions that cause injuries to pedestrians using a street or sidewalk in the usual and customary manner. *See City of Knoxville v. Baker*, 150 S.W.2d 224, 228 (Tenn. App. 1940). The obstruction or defect must be dangerous and the danger must be one that a reasonably prudent person would have anticipated as a natural and probable result of allowing the obstruction or defect to exist. *Forrester v. City of Nashville*, 179 Tenn. 682, 169 S.W.2d 860, 861 (Tenn.1943); *Batts v. City of Nashville*, 22 Tenn. App. 418, 123 S.W.2d 1099, 1102-1103 (1938). A risk is foreseeable if a

2

reasonable person could foresee the probability of its occurrence. ***Doe v. Linder Construction Co., Inc.***, 845 S.W.2d 173, 178 (Tenn. 1992).

In this case, the hole which caught Bragg's heel was an abrupt break-off from the edge of the step. "An abrupt break-off or drop in a depression is generally recognized as being more dangerous than one which tapers off gradually." ***Batts v. City of Nashville***, 123 S.W.2d 1099, 1102 (Tenn. App. 1938). To determine if a condition is dangerous or defective, the issue is whether a reasonably prudent person traveling along a sidewalk or highway who unexpectedly encountered the hole would suffer injuries. ***Batts*** at 1104; ***City of Memphis v. McCrady***, 124 S.W.2d 248, 249 (Tenn. 1938).

The hole in this case was located at the top of the steps, where it is more likely that serious injury could result from a fall. In addition, the trial judge specifically found that women visiting the Howard building frequently wore high heels, which could get stuck in a hole such as the one at issue in this case.

From reviewing the record, the evidence presented does not preponderate against the trial court's finding that the hole in the stairs constituted a dangerous and defective condition that could have foreseeably resulted in an injury similar to that which Bragg received.

Metro next contends that the trial court erred by not finding that the hole in the steps constituted an "open and obvious" condition which would have relieved Metro of the duty to repair or warn.

Since the adoption of comparative fault in ***McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn. 1992), Tennessee courts have attempted to reconcile the open and obvious rule with the doctrine of comparative fault. In ***Eaton v. McLain***, 891 S.W.2d 587, 595 (Tenn. 1994), the Tennessee Supreme Court stated: "although Tennessee law provides that premises owners owe invitees a duty to warn of latent or hidden dangers, this duty does not arise if the danger is open and obvious." Some intermediate appellate decisions have stated that the adoption of comparative fault does not impact the open and obvious rule. ***See Tracy v. Exxon Corp.***, No. 02A01-9512-CV-00277, 1996 WL 741876 (Tenn. App. Dec. 31, 1996); ***Valentine v. Weatherford***, No. 02A01-9511-CV-00264, 1996 WL 741878 (Tenn. App. Dec. 31, 1996); ***Jones v. Exxon Corp.***, No. 02A01-9507-CV-00159, 1996

WL 482674 (Tenn. App. Aug. 27, 1996); *Shope v. Radio Shack*, No. 03A01-9508-CV-00288, 1995

WL 733885 (Tenn. App. Dec. 7, 1995).

Other intermediate appellate decisions have held the open and obvious rule does not bar

recovery; rather the trier of fact compares the defendant's negligence to the plaintiff's negligence

in failing to exercise reasonable care regarding a danger that is "obvious, reasonably apparent, or as

well known to the injured party as to the owner. . . ." *Coln v. City of Savannah*, No. 02A01-9507-

CV-00152, 1996 WL 544652 at *3 (Tenn. App. Sept. 25, 1996), *perm. to appeal granted*, Feb. 3,

1997; *See also Broyles v. City of Knoxville*, No. 03A01-9505-CV-00166, 1995 WL 511904 (Tenn.

App. Aug. 30, 1995); *Hazelwood v. Certainteed Corp.*, No. 02A01-9405-CV-00106, 1995 WL

676042 (Tenn. App. Nov. 14, 1995); *Cooperwood v. Kroger Food Stores*, No. 02A01-9308-CV-

00182, 1994 WL 725217 (Tenn. App. Dec. 30, 1994).

In this case, regardless of the approach adopted with respect to the open and obvious rule,

the result is unaffected. Bragg testified that the hole was noticeable only by intentionally looking

at the exact place where the hole was located:

Q:      [W]hen you went out the last time, there's no question you were in
        the vicinity of where this particular hole was?
A:      That's correct.
Q:      And if you were looking, there's nothing--had you been looking at
        these steps, there's nothing that would have obstructed your view
        from the top of the steps from seeing this hole, was there?
A:      There's nothing--You mean like--to block it?
Q:      If you were looking you could have seen it.
A:      If I would have been like inspecting it like that. But just the normal
        glance that you give when you walk, you wouldn't see it. But if you
        really looked down to see the hole, once you knew it was there you
        would definitely see it.
Q:      Well you alleged in your complaint, did you not, Ms. Bragg, that the
        hole upon proper inspection was easily noticed?
A:      Upon inspection. When I looked back after I fell to see what had
        caused me to fall and my heel was in the hole, yes, you could see it
        then but you wouldn't just see it normally walking. But if you looked
        for it, you definitely would see it.
                            *****
Q:      Ms. Bragg, these pictures which have been entered as Collective
        Exhibit 16, it's my understanding this is the top layer.
A:      Correct.
                            *****
Q:      So, if you were holding this like this, that would be as you were
        looking down the steps as you were headed down; is that correct?
A:      That's correct.
Q:      And it's your testimony that if you were standing there where
        whoever was standing there taking this picture, you couldn't see that
        hole?

4

A:     I couldn't see it. It's very, very evident now because the contrast, this white that's filled in. If I had been looking down, if I would have been doing like this, I would have saw [sic] it.

Q:     In other words, if you were paying attention to where you were walking you would have seen it?

A:     No sir, that's not correct. If I would have been looking down looking for a hole looking to fall, then I would have saw it. But just normal walking, just like you just walked over there, you do not look at every step in front of your feet. You don't do that when you walk.

**\*\*\*\***

Q:     So, it's your testimony then, Ms. Bragg, that you were not looking at the steps as you were descending the steps?

A:     No, I was not looking down at the steps. I was looking in front of me to not walk into anybody. That's more of what I was thinking to not do because people were coming up and down the steps.

**\*\*\***

Q:     Ms. Bragg, you don't generally go down steps without looking to see if there's something on the steps, do you?

A:     In a public place I do because normally there's nothing on the steps.

From our review of the record, regardless of the approach adopted with respect to the open and obvious rule, the evidence does not preponderate against the trial court's conclusion that the hole in the steps was not an "open and obvious condition," and that Bragg did not fail to exercise reasonable care for her own safety. The evidence preponderates in favor of the trial court's determination that Metro was one hundred percent negligent. Consequently, the judgment against Metro must be affirmed.

The decision of the trial court is affirmed. Costs on appeal are taxed to Appellant for which execution may issue if necessary.

_____
_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**