HOWARD A. HAMILTON, Respondent, *v.* THE CITY OF BUFFALO Appellant.

MUNICIPAL CORPORATION — SLIGHT DEFECT IN CROSSWALK — EXEMPTION FROM LIABILITY. A municipal corporation is not chargeable with negligence when an accident happens to a traveler by reason of a slight defect in a street from which danger was not reasonably to be anticipated as likely to happen, such as a rounded depression in a flagged sidewalk about four inches deep, thirty-four inches long and about twelve inches wide, caused by the wheels of heavily-laden trucks which had worn off the corners of two of the flagstones where they came together, upon the edge of which depression he stepped, his foot slipping in, causing him to

fall, and which had existed for a period of from six to twelve months, and was so slight as not to suggest to the mind of an ordinarily careful and prudent man that it was dangerous.

*Hamilton* v. *City of Buffalo*, 55 App. Div. 423, reversed.

(Argued December 9, 1902; decided January 6, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 30, 1900, reversing a judgment in favor of defendant, entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles L. Feldman, Corporation Counsel (Edward L. Jung* of counsel), for appellant. No negligence of the defendant causing or contributing to the plaintiff's injury was shown. (*Beltz* v. *City of Yonkers,* 148 N. Y. 67; *Taylor* v. *City of Yonkers,* 105 N. Y. 202; *Ring* v. *City of Cohoes,* 77 N. Y. 83; *Searles* v. *M. R. Co.,* 101 N. Y. 661.)

*John Cunneen* for respondent. The injury was caused by the negligence of defendant. (*Ring* v. *City of Cohoes,* 77 N. Y. 88; *Phillips* v. *N. Y. C. & H. R. R. R. Co.,* 127 N. Y. 657; *Leeds* v. *N. Y. T. Co.,* 64 App. Div. 484; *Porcella* v. *M. R. F. L. Assn.,* 50 App. Div. 158.)

HAIGHT, J.  This action was brought to recover damages for injuries sustained by the plaintiff in falling upon a crosswalk in the city of Buffalo. At about half-past 10 o'clock in the forenoon of the 26th day of February, 1898, the plaintiff was walking along Erie street upon the crosswalk over the Terrace to his place of business at the corner of Erie street and the Terrace. When he arrived within six or seven feet of the curb or gutter along the westerly side of the Terrace he stepped upon the edge of a hole or depression in the pavement; his foot slipped in, his ankle turned and he fell upon it, causing the injury for which this action was brought. There had been a slight fall of snow and the crosswalk was

slippery.   The Terrace was a street paved with Medina sandstone and the crosswalk consisted of two or three tiers of flagging stone laid in the pavement across the street nearly upon a level with the pavement.   The hole or depression appears to have been formed by the wheels of heavily laden trucks which had worn off the corners of two of the flagstones where they came together, causing a rounded depression in the flagstones extending into the first tier of flagging for a distance of eight or nine inches and then extended back into the pavement, making the depression thirty-four inches long, about twelve inches wide and in the form of a V.   It was about four inches deep.   This condition of the flagstones forming the crossing, and of the pavement abutting, had existed for a period of from six to twelve months.   The plaintiff's place of business was upon the corner of these streets, but forty or fifty feet distant from the place of the accident.   The plaintiff, at the time of the accident, was walking at an ordinary gait, thinking of his business, and did not notice the hole before his foot slipped into it.   He had been, however, in the habit of passing over this crosswalk four or five times each day; had often noticed the depression, but testified " that this hole made no particular impression upon my mind; not any more than any other holes."   At the conclusion of the plaintiff's evidence the trial court, upon the application of the city attorney, ordered a nonsuit, and the question presented for determination is as to whether the evidence of the plaintiff was sufficient to carry the question to the jury.

We are of the opinion that the nonsuit was proper.   There was a depression in the pavement, and the corners of the two flagstones had been worn into by the wheels of heavy trucks, but the depression or hole, as it has been called, was so slight as not to suggest to the mind of an ordinarily careful and prudent man that it was dangerous.   The authorities of a city are not required to keep the streets in an absolutely perfect condition, for this would be practically impossible.   All kinds of pavements that have heretofore been discovered and used are subject to wear and some displacements when used by

heavily laden vehicles, and this cannot be prevented. It is the duty of the municipality to remedy defects within a reasonable time, which an ordinarily prudent man would regard as dangerous. The law imposes upon the municipality the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care, but when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated as likely to happen, it is not chargeable with negligence. As bearing upon the character of the defect, the plaintiff's own testimony is important. As we have seen, his place of business was within a few feet of the defect in the street. He was perfectly familiar with the condition of the place, having seen it several times a day as he passed to and from his place of business. He, as much as any other person in the city, was interested in having the street in front of his own premises kept in safe condition, and yet it does not appear that he ever made complaint to any city official or any other person of this defect. Indeed, he testified, as we have seen, that "it made no particular impression on my mind." Evidently it did not occur to him that it was dangerous, or that accidents were reasonably to be anticipated by its existence.

It appears to us that the case of *Beltz* v. *City of Yonkers* (148 N. Y. 67) is conclusive upon the question raised in this case. In that case the hole was in the center of a sidewalk instead of a crosswalk, but ordinarily a person exercises more vigilance upon a crosswalk over a street than he does upon a sidewalk where he is not called upon to watch for teams or passing vehicles. The hole in that case was occasioned by the breaking of the stone flagging, leaving a hole two and one-half inches deep and of about the same size of that in the case under consideration. The plaintiff in that case stepped into the hole and fell. In this case the plaintiff stepped upon the edge of the depression and his foot slipped in, causing him to fall. The hole in this case was a trifle deeper, but its additional depth did not affect his stepping upon the edge of the depres-

sion and slipping into it. (See, also, *Hubbell* v. *City of Yonkers*, 104 N. Y. 434.)

The order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs.

VANN, J. (dissenting). If this case had been submitted to the jury, they could have found from the evidence that a wedge-shaped hole, 28 inches long, 12 inches wide and 4 inches deep, had existed for a year in a crosswalk of one of the public streets of the city of Buffalo; that the edges of the Medina flagstones bordering upon the hole were slanting and slippery, as they had been rounded by the passage of vehicles; that the plaintiff knew of the hole but did not see it at the time of the accident, as there was a covering of snow on the crosswalk and the wind had blown snow into the hole so that it was concealed; that when walking at an ordinary gait, in the daytime, thinking about his business, he stepped on the smooth, round edge of one of the flagstones contiguous to the hole, his foot turned and slipped into the hole, he stumbled, fell and sprained his ankle severely; that he did not see the hole owing to the snow, and did not know that it was just where he stepped when he was injured. One witness, a teamster, testified that he had driven into the hole with a load and it almost knocked his horse down, and another, who saw the hole a year before the accident, said that when a forward wheel went into the hole " it was liable to throw you off the wagon."

From these facts the jury could have found that the hole was the proximate cause of the injury and that the city was guilty of negligence in permitting the crosswalk to remain in such a dangerous condition for so long a period. While the plaintiff testified at one time that he did not see his foot go into the hole, but that it was his " theory" that it went in, he also swore positively on the direct, cross and re-direct examinations that his foot went into the hole. It was not necessary for him to see his foot go in, for he could testify from the sense of touch or feeling whether it went in or not.

Because we held in one case, under its peculiar facts, that a depression of two and one-half inches in a sidewalk was not dangerous, we are asked to hold in this case that a hole four inches deep in a crosswalk is safe. (*Beltz* v. *City of Yonkers,* 148 N. Y. 67.) The logic of the request suggests the query whether a hole six or eight inches deep is free from danger as matter of law. How deep must a hole be to present a question of fact? With what kind of a rule can the court measure it, after brushing aside trifles? It was the duty of the city to remedy such defects as a man of ordinary prudence would regard as dangerous. Can we say judicially that the natural result of stepping or slipping into a hole as deep as the one under consideration would not be a fall with physical injury as a consequence? Unless we can so declare as matter of law, a question of fact was presented for the jury as to the negligence of the defendant.

The jury could have found that the plaintiff was free from contributory negligence, for the hole was partially concealed by the snow, and he was not bound to have its precise location in mind when passing over the crosswalk. While the jury could have found that he was negligent, the evidence would not compel them to do so.

The main contention of the defendant, in its effort to sustain the nonsuit, is that the plaintiff failed to comply with chapter 572 of the Laws of 1886 and section 16 of chapter 105 of the Laws of 1891, in that he filed no notice of intention to sue with the corporation counsel of the defendant within the statutory period. The earlier statute requires notice of intention to commence an action for damages for personal injuries alleged to have been sustained by reason of the negligence of the officers of any city having fifty thousand inhabitants or over, to be filed with the counsel to the corporation " or other proper law officer thereof " within six months after such cause of action shall have accrued, or the action cannot be maintained. The later statute provides that no action to recover " any claim against the city (of Buffalo) shall be brought until the expiration of forty days after the claim shall

have been filed with the city clerk for presentation to the common council for audit, * * * and no action shall be maintained against the city for personal injury unless notice of intention to commence such action shall have been filed with the corporation counsel within six months after such cause of action shall have accrued."

It appeared upon the trial that the plaintiff filed a verified claim in due form and in due time with the city clerk, who reported it to the board of aldermen and it was referred to a committee. One month later an assistant of the corporation counsel, who had charge of the claim, conferred with the plaintiff's attorney concerning it, examined the plaintiff and his physician under oath, as permitted by the city charter, and in reply to a request for settlement informed said attorney that he might wait before he took any further proceedings and he would submit the facts to the authorities and let him know. Nearly two months later the plaintiff's attorney saw the assistant corporation counsel, who still had charge of the claim, and asked him if he had heard anything and he replied : " Yes, there is no chance. They have refused the claim. * * * You need not file any notice. There will be no settlement in the case, so that you may as well commence the action at once." The plaintiff's attorney, owing to this statement, filed no notice of intention to sue, and it was not until after all this had occurred that the action was commenced.

The assistant of the corporation counsel in charge of the claim had power to waive the service of notice of intention to sue and the evidence would warrant a jury in finding that he did so. The notice affected the remedy only and was merely a method of practice provided for the benefit of the city, which could be waived by it, or by its corporation counsel, or by any "other proper law officer" of the city, such as the assistant corporation counsel, to whom charge of the claim had been committed. There was no waiver of anything which affected the cause of action, as such, but simply of a form of procedure, the object of which, as we have held,

was to seasonably inform the counsel of the corporation of the claim which was to be sued upon in order that it might be immediately investigated and properly defended. (*Missano* v. *Mayor, etc., of N. Y.*, 160 N. Y. 123. See, also, *Sheehy* v. *City of New York*, 160 N. Y. 139; *Sprague* v. *City of Rochester*, 159 N. Y. 20.) No further discussion is necessary in view of the prevailing opinion below.

I think that the judgment entered upon the nonsuit was properly reversed and that the order of the Appellate Division should be affirmed and judgment rendered against the defendant upon its stipulation, with costs.

PARKER, Ch. J., GRAY, O'BRIEN and CULLEN, JJ., concur with HAIGHT, J.; BARTLETT, J., concurs with VANN, J.

Order reversed, etc.