BATTS v. CITY OF NASHVILLE.—123 S. W. (2d) 1099.

Middle Section.    October 8, 1938.

Petition for Certiorari Denied by Supreme Court, January 21, 1939.

Guild & Guild, of Nashville, for plaintiff in error Mrs. Batts.

J. Washington Moore, Jack Keefe, Robert L. Alexander, Jr., M. S. Ross, and K. T. McConnico, Jr., all of Nashville, for defendant in error City of Nashville.

CROWNOVER, J. This is an action to recover damages for personal injuries sustained by the plaintiff, Mrs. Batts, averred to have been caused by a fall on the sidewalk, by reason of stepping into a hole or depression, allowed to exist by the negligence of the defendant City.

The defendant pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the close of the plaintiff's evidence, and again at the conclusion of all the evidence, the defendant moved the court for peremptory instructions in its favor on the grounds, (1) that there was no evidence to support the verdict; (2) that the defect in the street was not an actionable defect; and (3) that the plaintiff was guilty of contributory negligence as a matter of law. The motions were overruled, to which the defendant excepted.

The jury returned a verdict of $1,000 in favor of the plaintiff and against the defendant City.

The City filed its motion for a new trial, upon the hearing of which the trial judge sustained its motion for peremptory instructions, made at the conclusion of all the evidence, and directed the jury to return a verdict for the defendant, which was accordingly done, and judgment was entered dismissing the plaintiff's action at her cost.

The plaintiff filed her motion for a new trial, which was overruled, to which she excepted, and appealed in error to this court, and has assigned errors, which are, in substance, that there is no evidence to support the verdict.

On February 17, 1936, at about 5 o'clock in the evening, Mrs. Annie Batts, a woman of the age of 42 years, was walking east on Bridge Avenue, between the Woodland Street bridge and First Street, on the south side of the street, on her way home, when, at a point between the building occupied by the East Side Plumbing Company, at 66 Bridge Avenue, and the next building east of it (there being a fenced space of about four or five feet between the buildings), she stepped into a hole or depression in the sidewalk and fell, breaking her right arm.

It was dark, and rain and snow were falling.

There was a street light about 45 feet east of this place, and one about 48 feet west of it; and there was a lighted sign in front of the next building, extending out over the sidewalk.

Bridge Avenue at this point slopes down grade towards the east, and the surface of this sidewalk slightly slopes to the north.

Mrs. Batts, although acquainted with the location, had not noticed this hole or depression before the accident.

Mrs. Batts testified that the depression or defective place in the sidewalk began at the fence and extended north about 5 feet to the center of the sidewalk; that it was about 12 or 14 inches wide at the fence and about 3 inches deep, and about 18 inches wide and one inch deep at the center of the sidewalk; and that the hole or depression "tapered gradually" from the fence to the center of the sidewalk.

Carl Hechert, a mechanic, of the age of thirty years, testified that

he looked at the hole two or three days after the accident; that he didn't measure it; but he testified that the dimensions were about the same as those given by Mrs. Batts. He described it as "a rough place in the pavement." He further testified that the hole had been in the sidewalk in about the same condition for three or four months.

Several members of the City's street building department testified that in the spring of 1935 the concrete surface of the sidewalk at this point was broken; that they took out all the broken pieces of concrete and filled the place with crushed rock and macadam and tamped it down well; that no hole or depression was left, and the sidewalk was left in smooth condition.

One witness testified that in December, 1935, this part of the sidewalk was smooth.

Other witnesses for the City testified that the hole was one-half to three-fourths of an inch deep; others that it was one to one and one-half inches deep at the deepest part and tapered off to nothing.

About six weeks after the accident Sullivan, who operates the East Side Plumbing Company, removed the macadam and filled the place with concrete.

The trial judge sustained the defendant's motion for peremptory instructions, the grounds of which were (1) that there was no evidence to support the verdict; (2) that the defect in the sidewalk, complained of, was not actionable as a matter of law; and (3) that the plaintiff was guilty of contributory negligence.

The plaintiff assigns as error the action of the trial judge in sustaining said motion and dismissing her action.

1. The defendant City insists that Mrs. Batts doesn't know where she fell, as she notified the City that she fell on the sidewalk in front of the building occupied by the H. B. Jordan Plumbing Company, at 62 Bridge Avenue, and several days later served a second notice correcting the place of the accident to show that she fell in front of the business house of the East Side Plumbing Company, at 66 Bridge Avenue.

On March 27, 1936, Mrs. Batts gave the Mayor of the City of Nashville written notice that she would sue the City for damages for her injuries sustained on account of this hole or depression in the side walk, the notice stating that the hole was in the sidewalk at a point between the building occupied by the H. B. Jordan Plumbing Company, at 62 Bridge Avenue, and the building immediately east of it. On March 30, 1936, she served a second notice, which stated that it was in correction of the first notice, in that, the place in the sidewalk which caused her fall and injuries was between the building occupied by the East Side Plumbing Company, at 66 Bridge Avenue, and the building immediately east of it.

Mrs. Batts testified that she positively identified the hole in the sidewalk, but made a mistake in securing the name and number of the business house which the hole was nearest to. Her attorney testified that there was no other hole in the sidewalk, except this hole, in front of this group of business houses. This was sufficient identification of the hole or depression. The evidence establishes that she did trip and fall at the point in question.

2. The City insists that this depression in the sidewalk was only a slight defect, and, as a matter of law, was not actionable; that it could not be reasonably anticipated by an ordinarily prudent person that a traveler on the sidewalk unexpectedly encountering the hole or depression, would suffer injury.

The City admits that the concrete at this point had been broken; that the broken pieces had been taken out and the space filled with crushed rock and macadam; that it was not absolutely smooth; but it insists that it was not a dangerous place; that it tapered off or decreased in such a manner as not to be dangerous and did not constitute actionable negligence on its parts.

Whether a defect in a highway is an actionable one, is a question for the jury, unless conditions and circumstances are so clear and convincing as to leave no room for reasonable controversy.

The question is whether or not, in such a condition, the sidewalk could be said to be dangerous—a condition that would justify a reasonable and prudent person in anticipating danger to a person using the street with ordinary care, and sustain a finding that it was negligent for the defendant, a municipal corporation, to allow the street to remain in such a condition.

There is conflict in the evidence as to the size and depth of the depression, the evidence for the plaintiff being that it was three inches deep at one point and one inch deep at another, and the evidence for the City being that it was one to one and a half inches deep at the fence and "tapered off" or decreased to nothing.

But the plaintiff's evidence is that the hole tapered off gradually. Nobody testified that there was an abrupt break off or drop. An abrupt break or drop in a depression is generally recognized as being more dangerous than one which tapers off gradually.

"It has been established by repeated decisions of this court that, upon a motion for peremptory instructions, the entire evidence must be looked to, and that it must be given the construction most favorable to the adversary party, and all reasonable inferences allowed in his favor, and that, if there is then seen to be a dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion should be denied. Kinney v. Railroad Co., 116 Tenn. [450], 451, 92 S. W., 1116; Mayor, etc. v. Reese, 138 Tenn. [471],

424

479, 197 S. W., 492, L. R. A., 1918B, 349; Western Union Tel. Co. v. Lamb, 140 Tenn. [107], 111, 203 S. W., 752.'' Johnston v. C. N. O. & T. P. Ry. Co., 146 Tenn., 135, 149, 240 S. W., 429, 433; Jackson v. City of Nashville, 17 Tenn. App., 413, 417, 68 S. W. (2d), 137.

■ ■ ''The right of a party to have the jury pass upon the question of liability becomes absolute where the facts are in dispute and the evidence is conflicting, or when the proof discloses such a state of facts that, in essaying to fix responsibility for the injury or damage, different minds may arrive at different conclusions. The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a question of law, when and only when the facts are undisputable, being stipulated, found by the court or jury, or established by evidence that is free from conflict, and when the inference from the facts is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it.'' 20 R. C. L., 169, 170, 171, sec. 141; Lovier v. City of Nashville, 1 Tenn. App., 401; Park City v. Owens, 7 Higgins 359, 7 Tenn. Civ. App., 359; Jackson v. City of Nashville, 17 Tenn. App., 413, 417, 68 S. W. (2d), 137.

■ ''It will not do to rest the rule upon inches only. That is a factor in arriving at the result, but the other conditions and surrounding circumstances must also be considered.'' Johnson v. Eau Claire, 149 Wis. 194, 135 N. W. 481, 483.

''A difference of 2⅜ inches in the level between cement squares of sidewalk on a much-traveled street was not actionable 'insufficiency or want of repairs' which would, under statute, impose liability on city for injuries sustained by pedestrian who stumbled over the defect, in absence of other contributory circumstances.'' McCormick v. City of Racine, 227 Wis., 33, 277 N. W., 646.

■ As was said in Davidson v. City of New York, 133 App. Div., 352, 117 N. Y. S., 185, 186:

''It is impossible to free a city from such slight defects, and unreasonable to say, or permit a jury to say, that they are 'obviously dangerous,' which is the test of the city's liability. We know that they are not. If they were, thousands and thousands would be hurt by them hourly. That it is 'possible' for some one out of many . . . to trip on such a defect does not make it dangerous. Probability, not possibility, governs.''

■ ''Assuming that the defendant's officers were men of reasonable prudence and judgment, could they, in the reasonable exercise of these qualities, have anticipated this accident, or a similar one, from the existence of this depression in the walk? They could undoubtedly have repaired it at very little expense, but the omission to do so does not show or tend to show that they were negligent, unless the defect was of such a character that a

reasonably prudent man should anticipate some danger to travelers on the walk, if not repaired. If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe, within the rule, and when accidents occur the municipality must be treated practically as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect, from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence." Getzoff v. City of New York, 51 App. Div., 450, 64 N. Y. S., 636, 638; Beltz v. City of Yonkers, 148 N. Y., 67, 42 N. E., 401; City of Knoxville v. Hood, 20 Tenn. App., 220, 97 S. W. (2d), 446.

"A municipal corporation is not chargeable with negligence when an accident happens to a traveler by reason of a slight defect in a street from which danger was not reasonably to be anticipated as likely to happen, such as a rounded depression in a flagged sidewalk about four inches deep, thirty-four inches long and about twelve inches wide, . . . upon the edge of which depression he stepped, his foot slipping, in causing him to fall, and which had existed for a period of from six to twelve months, and was so slight as not to suggest to the mind of an ordinarily careful and prudent man that it was dangerous." Hamilton v. City of Buffalo, 173 N. Y. 72, 65 N. E. 944.

"To be actionable the obstruction must be dangerous, and the danger must be such as a reasonably prudent person would have anticipated as a natural and probable result. . . . To establish negligence it must be shown that the injury sustained is one that would probably flow from allowing that obstruction as it existed." 7 McQuillin on Municipal Corporations, 125, 128, sec. 2956, and p. 151, sec. 2969; 43 C. J., 1009, 1010, 1014.

"The municipality will not be liable for every defect or obstruction, however slight or trivial, or very little likely to cause injury, or for every mere inequality or irregularity in the surface of the way; it is only against danger which can or ought to be anticipated, in the exercise of reasonable care and prudence, that the municipality is bound to guard." 43 C. J., 1010, sec. 1793.

"Holes, ruts, or depressions in the street or sidewalk may give rise to a right of action for injuries caused thereby if they are of such a nature that danger therefrom might be reasonably anticipated. But slight holes or depressions which are not in the na-

ture of traps, and from which danger could not be reasonably anticipated, are not defects for which an action will lie." 43 C. J., 1014, sec. 1796.

"A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions, or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby. The fact that the surface of a walk may have become uneven from use. . . . so that persons are liable to stumble or be otherwise inconvenienced in passing, does not necessarily involve the municipality in liability, so long as the defect can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such a nature as not of itself to be dangerous to persons so using the walk." 13 R. C. L., 398, 399, sec. 326.

In Getzoff v. City of New York, 51 App. Div., 450, 64 N. Y. S., 636, 638, the plaintiff fell because her foot went into a hole in the sidewalk which was three inches deep, there being no satisfactory testimony as to its area size. It was held that the defect was a slight one from which danger could not be reasonably anticipated.

In Beltz v. City of Yonkers, 148 N. Y., 67, 42 N. F., 401, and Hamilton v. City of Buffalo, 173 N. Y. 72, 65 N. E., 944, the court took the position in each case that a hole in a sidewalk caused by wear and breakage, between two and three inches deep and several inches in area, was too slight a defect to sustain an action for negligence.

It would be impossible to derive a rule from the numerous cases by which to fix the line of demarcation between actionable size and depth of holes in streets and sidewalks and nonactionable size and depth. The cases all come back to the question of whether or not it could be reasonably anticipated, by a reasonably prudent person, that a traveler on the sidewalk or highway unexpectedly encountering the obstruction or hole, would suffer injury, or as some of the cases express it, would probably suffer injury.

We are of the opinion that the trial judge was correct in directing a verdict for the defendant City.

The authorities of a City are not required to keep the streets in an absolutely perfect condition, for this would be practically impossible; and this assignment of error is overruled.

3. No evidence was introduced as to contributory negligence on the part of Mrs. Batts.

A citizen walking along a street does not have to keep his eyes on the pavement all the time; he may presume the city.

has done its duty. Mayor & Aldermen of Knoxville v. Cain, 128 Tenn., 250, 255, 159 S. W., 1084, Ann. Cas., 1915B, 762; Mrs. Robert Jackson v. City of Nashville, supra. It is not negligence to fail to look for danger which under the surrounding circumstances he had no reason to apprehend. 45 C. J., 950; Ellis v. Memphis Cotton Oil Co., 3 Higgins 642. Pedestrians usually notice depressions and minor defects at crossings, in alleys and in the gutters, as their attention is directed to such places, and they are expected to use care commensurate with the risk, but all have a right to assume that concrete sidewalks are in ordinarily good condition, and to regulate their conduct upon such assumption. See Dillon on Municipal Corporations, sec. 1698.

The burden of showing contributory negligence was on the City, but the question is immaterial in this case, as it is not determinative.

We think, under the facts, the court was not in error in directing a verdict for the defendant. The plaintiff in error's assignments of errors, except the last, are overruled and the judgment of the lower court dismissing the action is affirmed. The costs of the cause including the costs of the appeal are adjudged against Mrs. Batts.

Faw, P. J., and Felts, J., concur.