FILED
03/29/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2019 Session

## BONNIE SHAW v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 14C700   Thomas W. Brothers, Judge**

_____

### No. M2018-01157-COA-R3-CV

_____

This premises liability action involves allegations of negligence and negligence *per se*. The trial court dismissed the case at summary judgment, opining that no duty was owed to the plaintiff and holding that the plaintiff's negligence *per se* claims were legally insufficient.  For the reasons stated herein, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Rocky McElhaney and Justin Hight, Hendersonville, Tennessee, for the appellant, Bonnie Shaw.

Andrew D. McClanahan, Christopher M. Lackey and Jennifer Bonilla Moreno, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This case stems from an incident in 2013 when Bonnie Shaw, then a school bus driver for the school system operated by the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), arrived at Antioch Middle School for a driver training session.  After pulling into a large parking lot beside the school's football field, Ms. Shaw exited her bus and began walking across the parking lot to board a shuttle bus that would take her and other drivers to attend the scheduled training session.  Ms. Shaw

subsequently tripped and fell onto the pavement, however, precipitating the present lawsuit.

Because the initial procedural history of this case was covered by this Court in a previous appeal, we reproduce our prior overview below:

On February 19, 2014, Ms. Shaw filed the instant action in the Davidson County Circuit Court ("trial court"), alleging negligence by Metro and its employees in Metro's maintenance of the parking lot and seeking compensatory damages for her injuries. Ms. Shaw asserted that the parking lot existed in a state of disrepair and had been in such a state for a sufficient length of time that Metro knew or should have known of its dangerous condition. Ms. Shaw further asserted that Metro had breached its duty of care owed to her by failing to repair or warn her of this dangerous condition. Metro filed an answer, denying that the parking lot in question was in a dangerous condition or that it had been negligently maintained. Metro asserted that the instant action was controlled by the Governmental Tort Liability Act . . . and also subject to principles of comparative fault.

Metro filed a motion for summary judgment on August 4, 2016. On September 23, 2016, Ms. Shaw sought by motion to amend her complaint to include allegations of negligence *per se*. In her proposed amended complaint, Ms. Shaw asserted that Metro had violated various applicable building codes by failing to properly maintain the lot at issue. Metro subsequently filed a statement of material facts and additional documents in support of its motion for summary judgment. Ms. Shaw filed a response as well as her own statement of material facts. Ms. Shaw also attached an affidavit from an engineering expert, who opined that Metro had violated various building codes by failing to adequately maintain the parking lot. The record does not demonstrate that the trial court ever considered or acted on Ms. Shaw's motion to amend, a point that Metro concedes in its appellate brief.

On October 28, 2016, the trial court conducted a hearing regarding Metro's motion for summary judgment. The court entered an order granting summary judgment in favor of Metro on November 21, 2016, stating in pertinent part:

The case of *Coln v. City of Savannah* is controlling in this matter. There the Supreme Court explained that the fact that a danger to plaintiff was "open or obvious" does not automatically relieve a premises owner or possessor of [a] duty of care. *Coln v. City of*

*Savannah*, 966 S.W.2d 34 (Tenn. 1998). . . . In order to impose legal liability, a thing must be dangerous according to common experience. *Rye v. City of Nashville*, 156 S.W.2d 460, 461 (Tenn. Ct. App. 1941).

Tennessee court cases that have refused to require property owners to warn of or repair minor aberrations in surface conditions are still good law. *Batts v. City of Nashville*, involved a three inch deviation, and the Tennessee Supreme Court held that "slight holes or depressions which are not in the nature of traps, and from which danger could not be reasonably anticipated, are not defects for which an action will lie." 123 S.W.2d 1099, 1103 (Tenn. 1938). Similarly, *City of Memphis v. McCrady*, involved a two and a half inch deviation and the Court held that a "municipality cannot be held as an insurer, nor can it be charged with the duty to correct slight defects in sidewalks resulting from inequality in the expansion joints, produced by natural causes, where the inequality or unevenness does not make a dangerous obstruction calculated to produce injury to persons exercising reasonable care." 124 S.W.2d 248, 249 [ ] (Tenn. 1938); *see also Rye* at 461 (Tenn. Ct. App. 1941) (holding the probability that a concrete sidewalk block about two inches higher than the adjacent concrete block will cause injuries to pedestrians using the sidewalk with reasonable care is too remote to impose on the city the burden and expense of preventing such injuries, or the duty to guard against them).

Considering the foregoing, the Court finds that there are no genuine issues of material facts and this is a question of law to be decided by the Court. The parking lot at issue was uneven due to buckled pavement and contained a fifty-four foot crack that amounted to a deviation of up to one and a half inches. However, a property owner is not required to maintain a parking lot in the same condition as a billiard table; a parking lot does not have to be absolutely smooth. It will have some uneven surfaces and potentially dangerous areas, but the key question is whether the irregular surface at issue was unreasonably dangerous. The Court finds it was not.

The defect in question was open and obvious and the Plaintiff could have become aware of it through normal exercise of her senses as it was broad daylight and the lengthy crack was clearly visible. The obvious nature of the condition at issue is applicable to the Plaintiff as well as the Defendant. The foreseeable risk of harm caused by the minor aberration in [the] parking lot due to a slight elevation

- 3 -

change and the obviousness of the defect in the form of [the] crack does not outweigh the obvious nature of the aberration.

Accordingly, the Metropolitan Government owed no duty to Ms. Shaw. The Court finds there are no genuine issues of material fact and the Metropolitan Government's Motion for Summary Judgment is well taken.

Ms. Shaw timely appealed.

*Shaw v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. M2016-02455-COA-R3-CV, 2017 WL 6398341, at \*1-2 (Tenn. Ct. App. Dec. 14, 2017) (footnote omitted).

In the first appeal, which challenged the trial court's entry of summary judgment in favor of Metro, we focused squarely on the fact that the trial court had not addressed Ms. Shaw's motion to add allegations of negligence *per se* to her complaint. Opining that this necessitated a remand, we explained as follows:

Regarding the trial court's failure to rule on the pending motion to amend, a similar situation was addressed by our Supreme Court in *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236 (Tenn. 1993), wherein the plaintiff's motion seeking to amend his complaint was never ruled upon prior to the trial court's grant of summary judgment in favor of the defendant. On appeal, the High Court considered that Tennessee Rule of Civil Procedure 15.01, governing the amendment of pleadings, provides that leave to amend "shall be freely given when justice so requires." *See Henderson*, 868 S.W.2d at 237. The Court also considered persuasive federal precedent construing the similar Federal Rule of Civil Procedure 15(a), in which the Sixth Circuit Court of Appeals had held that "it was an abuse of discretion for a district court to dismiss a suit on the basis of the original complaint without first considering and ruling on a pending motion to amend." *Id.* at 238 (quoting *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988) (in turn citing *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)).

The *Henderson* Court thus vacated the trial court's grant of summary judgment, reasoning that:

the trial court must give the proponent of a motion to amend a full chance to be heard on the motion, must consider the motion in light of the amendment policy embodied in T.R.C.P. 15.01, that amendments must be freely allowed; and in the event the motion to

amend is denied, the trial court must give a reasoned explanation for [its] action.

*Henderson*, 868 S.W.2d at 238. *See also Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007) (explaining that before summary judgment was granted, "the amendment [to the complaint] should have been considered," but finding the error to be harmless due to the circumstances); *Reynolds v. Tognetti*, No. W2010–00320–COA–R3–CV, 2011 WL 761525, at *6 (Tenn. Ct. App. Mar. 4, 2011) (vacating the trial court's grant of summary judgment and remanding to the trial court for a full hearing regarding an unadjudicated motion to amend the complaint "in light of the policy that amendments are to be freely given").

. . . .

In the instant action, the trial court similarly failed to properly exercise its discretion. The court neither ruled upon the pending motion to amend nor undertook analysis . . . in order to determine whether the sought amendment should have been granted pursuant to Tennessee Rule of Civil Procedure 15.01. *See* [*Lowery v. Faires*, No. 03A01-9605-CV-00177, 1996 WL 718290, at *2 (Tenn. Ct. App. Dec. 16, 1996)]. Due to the trial court's lack of sufficient consideration of Ms. Shaw's motion to amend, summary judgment was improperly granted. *See Henderson*, 868 S.W.2d at 238. We therefore vacate the grant of summary judgment to Metro and remand this matter to the trial court for consideration of the motion to amend and entry of an order presenting a "reasoned explanation" for the grant or denial of the amendment. *See Henderson*, 868 S.W.2d at 238; *Lowery*, 1996 WL 718290, at *2. Following such action regarding the motion to amend, the trial court may consider the motion for summary judgment. *See id.*

*Id.* at *3–5.

After the case was remanded to the trial court, Ms. Shaw filed a "Notice of Hearing," indicating that her motion to amend was set to be heard on April 13, 2018. Subsequently, the parties each submitted filings with the court regarding the propriety, or lack thereof, of the requested motion to amend. In a response filed on April 9, 2018, Metro contended that the proposed amendments were futile and that the court should affirm its prior grant of summary judgment. First, Metro argued that the parties' previous summary judgment arguments had been presented as though the proposed amendments to Ms. Shaw's complaint had been granted; according to Metro, therefore, the prior grant of summary judgment had contemplated the additional negligence *per se* claims. Metro also took issue with the legal sufficiency of the allegations that Ms. Shaw wanted to add.

Through her proposed amended complaint, Ms. Shaw desired to add negligence *per se* claims based on alleged violations of Metro Code 16.24.330 and Metro-adopted American National Standard ICC/ANSI A117.1. According to Metro, the amendment related to Metro Code 16.24.330 was futile "because the language of that code section does not establish a sufficiently specific standard of conduct that would trigger the negligence per se doctrine." Moreover, in rejecting the applicability of the adopted ICC/ANSI A117.1 standard, Metro noted that, whereas the relied-upon standard was designed to protect persons with disabilities, there was "no evidence or allegation that Plaintiff is an individual with a disability." On April 11, 2018, Ms. Shaw filed a reply to Metro's April 9 response, arguing generally that no articulated reason had been given to deny her motion to amend.

Following a hearing on Ms. Shaw's motion to amend, the trial court entered an order on April 30, 2018 granting the motion, albeit while acknowledging Metro's point that the motion to amend had previously been treated as presumptively granted:

> Metro's Motion for Summary Judgment was heard on October 28, 2016. Though no order granting Plaintiff's motion to amend was submitted before that time, the Court treated the Motion to Amend as presumptively granted, and the Court considered the motion granted. Moreover, it must be noted that Plaintiff's response to Metro's Motion for Summary judgment referenced the newly added negligence per se claims, and both parties addressed the newly added negligence claims at oral argument, as reflected in the video transcript from the summary judgment hearing. However, the Court's oral ruling and final order granting summary judgment did not explicitly address Plaintiff's negligence per se claims. As a practical matter, these claims were raised and discussed and considered in the Court's ruling.

> In order to provide further clarification, and for the foregoing reasons, Plaintiff's Motion to Amend the Complaint is hereby GRANTED. The Court further orders that continuing summary judgment argument on Plaintiff's two negligence per se claims raised in the motion to amend . . . be set for May 11, 2018[.]

Consistent with the trial court's direction, continuing summary judgment argument on the added negligence *per se* claims was held on May 11, 2018. A few weeks later, on May 31, 2018, the trial court entered an order granting Metro summary judgment on the negligence *per se* claims, as well as reaffirming the prior summary judgment ruling. With respect to the negligence *per se* claims specifically, the court concluded as follows:

> Plaintiff's Amended Complaint asserts two negligence per se claims: one based on Metro Code 16.24.330 and another based on American

National Standard ICC/ANSI A117.1. The threshold question in determining whether the violation of a statute can trigger the negligence per se doctrine is whether the injured party is within the class of persons intended to benefit from, or to be protected by, a statute. Here, the American National Standard ICC/ANSI A117.1 is meant to protect individuals with disabilities. Plaintiff has never claimed or set forth proof that she is disabled, therefore the American National Standard ICC/ANSI A117.1 cannot trigger a negligence per se claim.

Another threshold question to determine whether a statute triggers the negligence per se doctrine is whether [it] establishes a specific standard of conduct. Metro Code 16.24.330 contains only general guidance on maintaining driveways and parking lots "free from hazardous conditions," and is posed in non-specific terms such as "safe." Since Metro Code 16.24.330 contains no specific standards of conduct, it does not trigger the negligence per se doctrine.

(internal citations omitted). Faced once again with the dismissal of her action, Ms. Shaw timely appealed to this Court.

## STANDARD OF REVIEW

Our task in this appeal is to determine whether the trial court erred in granting summary judgment in Metro's favor. Ms. Shaw prays that the trial court's grant of summary judgment be reversed and that the case be remanded for a trial on the merits. In assessing whether such relief is warranted, we are guided by the following law:

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citation omitted). When the moving party does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Because resolving a motion for summary judgment is a question of law, we review the trial court's disposition on the

issue *de novo* without a presumption of correctness. *Martin*, 271 S.W.3d at 84 (citation omitted). Indeed, we must make a fresh determination that the requirements of Rule 56 have been satisfied in each case. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) (citations omitted). In assessing the propriety of the motion, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Martin*, 271 S.W.3d at 84 (citation omitted).

*Bobo v. City of Jackson*, 511 S.W.3d 14, 18-19 (Tenn. Ct. App. 2015).

## DISCUSSION

This case involves allegations of negligence, as well as specific claims of negligence *per se*. We turn first to the trial court's dismissal of Ms. Shaw's articulated negligence *per se* claims, which were added in her amended complaint and which were the specific subject of the trial court's May 31, 2018 order.

Liability under the negligence *per se* doctrine can arise when a party fails to perform a duty imposed by statute or ordinance. *See Little v. Nashville, Chattanooga & St. Louis Ry. Co.*, 281 S.W.2d 284, 292 (Tenn. Ct. App. 1954) ("It is well settled that a failure to perform a statutory duty or duty imposed by ordinance is negligence per se, and if the injury is the proximate result or consequence of the negligent act, there is liability."). Specifically, the following elements must be established in order for a party to recover under the theory of negligence *per se*:

First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. Second, the injured party must be within the class of persons intended to benefit from or be protected by the statute. Finally, the injured party must show that the negligence was the proximate cause of the injury.

*Harden v. Danek Med., Inc.*, 985 S.W.2d 449, 452 (Tenn. Ct. App. 1998) (citations omitted).

Although declaring conduct negligent *per se* renders the conduct negligent as a matter of law, the negligence *per se* doctrine "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute." *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003). "To trigger the doctrine, the statute must establish a specific standard of conduct." *Id.* Indeed, this factor and many others must be considered by a court to determine whether the negligence *per se* doctrine is applicable. As we have noted previously:

The two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent. Affirmative answers to these questions do not end the inquiry. Courts also consider (1) whether the statute is the sole source of the defendant's duty to the plaintiff, (2) whether the statute clearly defines the prohibited or required conduct, (3) whether the statute would impose liability without fault, (4) whether invoking the negligence per se doctrine would result in damage awards disproportionate to the statutory violation, and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Id.* at 591 (footnote omitted) (citations omitted).

Here, there are two bases upon which Ms. Shaw seeks to advance a negligence *per se* theory of liability. In addition to citing to Metro Code 16.24.330, Ms. Shaw relies on Metro-adopted American National Standard ICC/ANSI A117.1. In our opinion, neither of these bases is legally sufficient to support a valid negligence *per se* claim in this case.

The relied-upon portion of Metro Code 16.24.330 provides in relevant part that "[a]ll sidewalks, walkways, stairs, driveways, parking spaces, and similar areas shall be kept in a proper state of repair, shall be maintained free from hazardous conditions, and shall be kept in a safe, clean, and sanitary condition." The trial court reasoned that this provision cannot trigger the negligence *per se* doctrine because it contains only "general guidance" and is "posed in non-specific terms." We agree with the trial court's conclusion. Because there is no specific standard of conduct established pursuant to Metro Code 16.24.330,[1] the negligence *per se* doctrine is inapplicable. *See id.* at 590-91 (noting that the court must consider "whether the statute clearly defines the prohibited or required conduct" and stating that in order "[t]o trigger the doctrine, the statute must establish a specific standard of conduct").

Metro-adopted American National Standard ICC/ANSI A117.1[2] is also unavailable to establish a negligence *per se* claim on Ms. Shaw's behalf. As we have noted, one of the threshold questions in a negligence *per se* case is whether "the plaintiff belongs to the class of persons the statute was designed to protect." *Id.* at 591. In concluding that this threshold question was not satisfied, the trial court noted as follows: "Here, the American National Standard ICC/ANSI A117.1 is meant to protect individuals with disabilities. Plaintiff has never claimed or set forth proof that she is disabled,

---

[1] Although counsel for Ms. Shaw did not waive the claim predicated on Metro Code 16.24.330, he did acknowledge at oral argument that a more specific standard of conduct could have been provided.

[2] According to Ms. Shaw, this standard requires, among other things, that any ground surface level changes greater than 1/4 inch receive special attention.

therefore the American National Standard ICC/ANSI A117.1 cannot trigger a negligence per se claim." There is no reason to disturb the trial court's ruling on this issue. At oral argument of this appeal, counsel for Ms. Shaw conceded that Ms. Shaw's ability to proceed pursuant to American National Standard ICC/ANSI A117.1 was not supported. In doing so, Ms. Shaw's counsel candidly acknowledged that the standard had, in fact, been adopted for persons with disabilities.

Having dispensed with Ms. Shaw's negligence *per se* theories of liability, we turn to the issue of whether her general negligence claim was appropriately dismissed by the trial court. The pivotal question here is whether Metro owed Ms. Shaw a duty of care under the facts of this case. If there is no duty, there can be no liability for negligence. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998) (noting that a "duty of care owed by the defendant to the plaintiff" is a necessary part of a negligence claim).

"Duty . . . is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm." *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999). The question of duty is one of law, and we review the matter de novo on appeal. *Rice*, 979 S.W.2d at 308. In evaluating whether a duty exists, we must determine whether the plaintiff's interest was entitled to legal protection at the hands of the defendant. *Id.*

"In cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises." *Dobson*, 23 S.W.3d at 330. Such a duty is based on the understanding that an owner has "superior knowledge of any perilous condition that may exist on the property." *Id.* To assess whether a risk to a plaintiff is unreasonable so as to give rise to a duty to act with due care, courts must employ a balancing approach. *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005). Several factors must be considered to evaluate the unreasonableness of a risk. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). These factors include:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id.*; *see also Rice*, 979 S.W.2d at 308 (noting that a court "must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm"). A risk is deemed unreasonable if "the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the

- 10 -

harm." *McCall*, 913 S.W.2d at 153. "For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008).

A duty may even be owed where the condition causing the injury is "open and obvious," *Rice*, 979 S.W.2d at 308, but "[t]he duty imposed on the premises owner . . . does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Id.* at 309 (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 61 at 426 (5th ed. 1984)). In cases involving an alleged defect, "[t]he test is the degree of danger, or possibility of injury, from the defect." *Henry v. City of Nashville*, 318 S.W.2d 567, 568 (Tenn. Ct. App. 1958). "Of course, anything that in fact causes harm is to some degree dangerous; but to impose liability, the thing must be dangerous according to common experience." *Id.*

In this case, the trial court reasoned that Metro owed no duty because there was no unreasonable risk of danger connected to the parking lot. It noted that the parking lot "contained a fifty-four foot crack that amounted to a deviation of up to one and a half inches," but stated that the defect in question was "open and obvious" such that Ms. Shaw "could have become aware of it through normal exercise of her senses as it was broad daylight and the lengthy crack was clearly visible." According to the court, "a property owner is not required to maintain a parking lot in the same condition as a billiard table; a parking lot does not have to be absolutely smooth." We agree.

A number of cases, several of which were cited by the trial court, indicate that minor pavement aberrations will not give rise to valid negligence claims. In *City of Memphis v. McCrady*, the plaintiff was injured when, while walking along sidewalk pavement, her heel "struck against a rise at the expansion joint which projected two and a half inches above the adjacent block." *City of Memphis v. McCrady*, 124 S.W.2d 248, 249 (Tenn. 1938). Our Supreme Court concluded that such facts did not present an issue for the jury, opining that the only inference was that "it could not be reasonably . . . anticipated that injury would result from use of the sidewalk by persons exercising ordinary care." *Id.* at 250. In commenting that a municipality cannot be "held as an insurer," the Supreme Court stated as follows:

> [A municipality cannot] be charged with the duty to correct slight defects in sidewalks resulting from inequality in the expansion joints, produced by natural causes, where the inequality or unevenness does not make a dangerous obstruction calculated to produce injury to persons exercising reasonable care. And so, where the evidence is conflicting, or the facts such as to authorize different inferences as to whether the defect is a

- 11 -

dangerous obstruction calculated to cause injury, the case must be submitted to the jury, but, where the defect or obstruction is such that reasonable men would not differ in the conclusion that the obstruction or defect was not dangerous to travel in the ordinary modes by persons exercising due care, a verdict should be directed.

*Id.* at 249.

In *Batts v. City of Nashville*, the plaintiff was injured when she stepped into a depression in a sidewalk and fell. *Batts v. City of Nashville*, 123 S.W.2d 1099, 1100 (Tenn. Ct. App. 1938). According to the plaintiff, the depression began at a fence and extended north about five feet to the center of the sidewalk; she claimed it was about twelve or fourteen inches wide and about three inches deep at the fence, and about eighteen inches wide and one inch deep at the center of the sidewalk. *Id.* at 1101. Suit was brought against the City of Nashville, and ultimately, the trial judge directed a verdict for the City. *Id.* at 1100. In the course of affirming the trial judge's action on appeal, we noted that it was impossible to free a city from slight defects:

> [It is] unreasonable to say, or permit a jury to say, that they are "obviously dangerous," which is the test of the city's liability. We know that they are not. If they were, thousands and thousands would be hurt by them hourly.[3] That it is "possible" for some one out of many . . . to trip on such a defect does not make it dangerous. Probability, not possibility, governs.
>
> . . . If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe, within the rule, and when accidents occur the municipality must be treated practically as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment, or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. But when an accident happens by reason of some slight defect, from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence.

---

[3] We note that in the deposition of Taffy Marsh, the executive director of transportation for Metro Nashville Public Schools, Ms. Marsh testified that there was not any documented evidence that anybody had ever fallen on the parking lot before or after the date of the incident in this case, even though the space had been used for training for "many years."

*Id.* at 1102-03 (citations omitted).

In *Rye v. City of Nashville*, the plaintiff was injured when her foot struck a block of concrete on the sidewalk that was about two inches higher than the adjacent block. *Rye v. City of Nashville*, 156 S.W.2d 460, 461 (Tenn. Ct. App. 1941). Although the plaintiff sued the City of Nashville in order to recover for her injuries, the trial judge directed a verdict for the City on the basis that the defect in the sidewalk was not actionable. *Id.* On appeal, we affirmed the trial court's action and noted that the case was similar to both *McCrady* and *Batts*, stating as follows:

> According to common experience defects like those in the *McCrady* and *Batts* cases are not so dangerous that harm may reasonably be expected to result from them. The probability that they will cause injury to pedestrians using the sidewalk with reasonable care is too remote to impose upon municipalities the burden and expense of preventing them or the duty of guarding against them. We think this is true of the defect in the present case.

*Id.* at 462.

Ms. Shaw attempts to distinguish *Batts*, *McCrady*, and *Rye* from the present action by noting that, in those cases, "there was no expert testimony to the dangerousness of the condition." She also tries to assail those prior decisions as "outdated." With respect to this latter contention, we observe that the basic premise from *Batts*, *McCrady*, and *Rye* remains good law. As we have noted, "[t]he duty imposed on the premises owner or occupier . . . does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated.'" *Rice*, 979 S.W.2d at 309 (quoting W. Page Keeton, *Prosser & Keeton on Torts*, § 61 at 426 (5th ed. 1984)). Further, we observe that the *Batts* decision, and several other cases of similar ilk, were recently cited by this Court favorably in *Green v. Roberts*, 398 S.W.3d 172 (Tenn. Ct. App. 2012).

In *Green*, the plaintiff sustained injuries after she tripped over a steel post that was protruding just above the surface of a parking lot owned by the defendant. *Id.* at 174. The disputed area was visible from a distance of up to eighty feet, and photographs showed that steel posts in the parking lot protruded about 3/4″ from the surface. *Id.* at 174, 181. When the plaintiff brought suit to recover for her injuries, the case was dismissed at summary judgment. *Id.* at 175. The trial court held, among other things, that no duty was owed to the plaintiff. *Id.* We affirmed the trial court's action when the case was appealed, specifically noting the importance of the fact that the "area complained of was only a minor 'aberration' in the parking lot." *Id.* at 181. Referencing *Batts* and other decisions, we emphasized that "both the Supreme Court of Tennessee and

this Court have held that recovery will not lie because of the existence of minor defects and depressions." *Id.*

We also reject Ms. Shaw's reliance on the fact that she proffered an expert on her behalf at summary judgment. The record reveals that her expert concluded by affidavit that Metro "had a duty to repair the parking lot or to warn pedestrians of the hazardous and dangerous condition of the parking lot." This conclusion is of no moment, of course, because the determination of whether a duty exists is within the province of the courts. *See Rice*, 979 S.W.2d at 308 (noting that duty is a question of law).

As it is, the facts of this case simply do not justify a determination that Metro owed a duty to repair or warn of the minor aberrations of the parking lot's surface. The parking lot may not be perfectly flat across its area, but common experience suggests that its conditions do not pose any likely danger.[4] The trial court observed that cracking in the pavement had resulted in a mere "deviation of *up to* one and a half inches,"[5] and photos submitted in the record confirm the conclusion that any injury from the area in question is remote. Specifically, we refer to those "reenactment" photos that Ms. Shaw testified to in her deposition, which allegedly depict the general area she fell in the parking lot. Although we certainly do not intend to be insensitive to or dismissive of Ms. Shaw's claimed injuries, we must conclude that, based on common experience, danger is not likely to be anticipated from the slight defects and unevenness shown on the parking lot.

Metro cannot be an insurer of every injury that occurs. In order to be liable for negligence, it must first have a legal duty of care. Here, we simply conclude that no legal duty arose as a result of the minor depressions that existed on the parking lot. There being no duty, the trial court did not err in dismissing Ms. Shaw's claim for negligence.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

ARNOLD B. GOLDIN, JUDGE

---

[4] In addition to the fact that the minor defects of the parking lot do not justify the imposition of a duty, which is of course dispositive, we observe that some of Ms. Shaw's deposition testimony underscores the notion that an injury was not likely to be anticipated. Although Ms. Shaw testified in her deposition that she had been to the parking lot once a year in the four years leading up to the incident at issue and had noticed that the lot was then in disrepair, she did not believe it was dangerous. When asked if she saw anything wrong with the parking lot on the date of her injury, she replied, "Just looked like a parking lot."

[5] Emphasis in quoted language added.